[No. 59443-1. En Banc. October 7, 1993.]

FLORENE M. KASTANIS, ET AL, *Respondents*, v. EDUCATIONAL EMPLOYEES CREDIT UNION, *Appellant.*

*Schwabe, Williamson, Ferguson & Burdell,* by *Elizabeth K. Reeve,* for appellant.

*Stanley M. Talcott,* for respondents.

MADSEN, J. — The Educational Employees Credit Union (EECU) appeals a jury's finding of marital status discrimination against Florene (Peggy) Kastanis, a former employee. EECU alleges that several of the trial court's instructions were erroneous and that the manner in which the court awarded attorney's fees was in error. We reverse because of error in the jury instructions and the trial court's award of attorney's fees.

## FACTS

Peggy Jones was first employed as a teller by EECU in 1973. She became its accounting manager in 1983 or 1984. Dean Kastanis was appointed Chief Executive Officer (CEO) of EECU in 1973. In 1985, Peggy Jones and Dean Kastanis began seeing each other socially. They did not attempt to conceal their relationship from anyone at EECU. In March 1985, EECU adopted a policy precluding employment of close relatives without prior approval of the Board of Directors (Board). EECU rescinded this policy against nepotism in 1986.

On October 5, 1989, Dean Kastanis notified members of the Board that he and Peggy Jones would marry within 2 weeks. The Board concluded that the marriage would result in a conflict of interest. The chairman of the board met with Dean on October 11, 1989, to discuss a possible resolution. The content of that discussion is disputed. The chairman of the board testified that she informed Dean that either he or Peggy would have to leave; Dean testified that there was never a suggestion that he or Peggy would be terminated or forced to resign. Peggy Jones and Dean Kastanis were married on October 21, 1989. On October 25, the Board voted to terminate Peggy. On October 30, Dean Kastanis was given a directive from the Board requiring him to immediately secure the resignation of Peggy Kastanis. She left work on October 31, and formally resigned 2 weeks later. In December 1989, the Board asked Dean to resign.

Peggy Kastanis, hereafter referred to as the plaintiff, sued EECU on June 27, 1990, alleging four causes of action: (1) discrimination based on marital identity; (2) wrongful discharge because of public policy; (3) sexual discrimination based on state law and title VII of the Civil Rights Act of 1964; and (4) intentional, reckless and/or negligent infliction of emotional distress.[1] Her complaint also requested equitable relief in the form of reinstatement to her former position.

On September 6, 1990, EECU tendered an unconditional offer of reinstatement. EECU explained that Dean's resignation from EECU obviated the need for plaintiff's termination. The position offered had the same title and the same benefits as plaintiff's previous position. Plaintiff refused the offer, however, because she and her husband had recently moved to eastern Washington. EECU knew of this move when it offered plaintiff reinstatement.

At trial, EECU moved for summary judgment on all causes of action or, in the alternative, to limit damages to the date of EECU's offer of reinstatement. The trial court granted summary judgment on the issues of violation of title VII, wrongful discharge, and intentional infliction of emotional distress. The issues of marital status discrimination and sexual discrimination based on Washington law proceeded to the jury. EECU defended itself from plaintiff's claim of marital status discrimination by arguing that her termination was justified under the "business necessity rule".

The jury ruled against plaintiff on the issue of sex discrimination, but found that EECU had discriminated against her on the basis of her marital status. The jury awarded plaintiff past economic damages, future economic damages, and noneconomic damages. The court awarded plaintiff all of her attorney's fees without distinguishing between her successful and unsuccessful claims. EECU appealed, assigning error to several of the jury instructions and to the court's award of

---

[1]Peggy and Dean Kastanis filed suit as husband and wife, but for simplicity's sake we will refer to Ms. Kastanis as the sole plaintiff.

damages and attorney's fees. The Court of Appeals certified EECU's appeal to this court pursuant to RCW 2.06.030.

## ANALYSIS
### Jury Instructions

The central issues in this case are whether the trial court properly instructed the jury on the issues of marital status discrimination and the business necessity defense.[2]

RCW 49.60.180 provides that it is an unfair practice for any employer to refuse to hire, to discharge, or to discriminate against any person because of "age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap . . .." RCW 49.60.180(1). The meaning of marital status as used in RCW 49.60.180 is not limited to conditions such as being married, single, or divorced, but also applies to antinepotism policies based on the identity of an employee's or applicant's spouse.[3] *Washington Water Power Co. v. State Human Rights Comm'n*, 91 Wn.2d 62, 67-69, 586 P.2d 1149 (1978); *McFadden v. Elma Country Club*, 26 Wn. App. 195, 203, 613 P.2d 146 (1980); *see also Edwards v. Farmers Ins. Co.*, 111 Wn.2d 710, 718, 763 P.2d 1226 (1988).

WAC 162-16-150 implements the statutory prohibition of employment discrimination based on marital status. The code provides that discrimination against an employee or applicant for employment because of (a) what a person's marital status is; (b) who his or her spouse is; or (c) what the spouse does, is an unfair practice because the action is based on the person's marital status. WAC 162-16-150(2). The code acknowledges, however, that there are circumstances where business necessity may justify action on the basis of what the spouse does. Business necessity includes "those circumstances where an employer's actions are based upon a com-

---

[2]Because this case involves allegations of disparate treatment, not disparate impact, we do not address the burdens of proof and defenses that would apply in disparate impact cases.

[3]In its 1993 regular session, the Legislature amended RCW 49.60.040 to include a definition of marital status. This version of the statute is not before us.

pelling and essential need to avoid business-related conflicts of interest, or to avoid the reality or appearance of improper influence or favor." WAC 162-16-150(2).

EECU argues initially that the trial court erroneously instructed the jury on the burden of proof applicable to plaintiff's claim of marital status discrimination. The court instructed the jury as follows:

Plaintiff claims unlawful discrimination based upon her marital status. In order for plaintiff to prove this claim, the plaintiff has the burden of proving each of the following propositions:

First, that she was married to another employee of the defendant;

Second, that she was terminated from her employment with the defendant; and

Third, that but for plaintiff's marital status, the plaintiff would not have been terminated.

If you find from your consideration of all of the evidence that each of these propositions has been proved against the defendant, your verdict should be for the plaintiff and against the defendant unless you find that defendant has proved the defense of "business necessity." If you find that defendant has proved the defense of business necessity, then your verdict should be for the defendant.

On the other hand, if any of the propositions on which plaintiff has the burden of proving has not been proved against the defendant, your verdict should be for the defendant.

Instruction 7; Verbatim Report of Proceedings, at 719-20.

EECU excepted to this instruction on the ground that it imposed on EECU a burden to prove, rather than merely produce, a nondiscriminatory business necessity reason for its actions. EECU also argued that the court should have instructed the jury that plaintiff had to prove that its claim of business necessity was a pretext for an intentionally discriminatory act.

Plaintiff defends the instruction on the ground that the defendant's burden is greater in this case because she provided direct evidence of discrimination. In the face of direct evidence, plaintiff contends that the defendant must prove by a preponderance of the evidence that the discrimination was justified.

■ The parties' positions here highlight the difficulties involved when the shifting burdens relevant to establishing a prima facie case of discrimination are included as instructions to the jury. The burden-shifting schemes, developed initially in the federal courts, were an effort to formulate uniform rules for making a prima facie case. These rules were never intended as a charge to the jury. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983).

Recognizing the "lack of harmony" among judges on the rules applicable to establishing a prima facie case under title VII, the Supreme Court addressed the difficulty by formulating a 3-step burden-shifting test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). This court has adopted the standard articulated by *McDonnell Douglas* in discrimination cases that arise out of RCW 49.60.180 and the common law. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 364, 753 P.2d 517 (1988); *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 136, 769 P.2d 298 (1989).

Under *McDonnell Douglas*, a plaintiff must first make out a prima facie discrimination case by showing that he or she: (1) was within the protected group; (2) was discharged; (3) was replaced by a person outside the protected group; and (4) was qualified to do the job. *See McDonnell Douglas*, at 802. The defendant employer then must show a legitimate nondiscriminatory reason for the termination. If the defendant fails to meet this production burden, the plaintiff is entitled to an order establishing liability as a matter of law. *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). *See also Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 70, 821 P.2d 18 (1991); *Carle v. McChord Credit Union*, 65 Wn. App. 93, 100-01, 827 P.2d 1070 (1992). The employer bears only the burden of producing a legitimate reason for discharge to avoid a directed verdict in the employee's favor. *Burdine*, at 257; *Wilmot*, at 70.

If the employer fulfills his or her burden of production by showing a nondiscriminatory reason for termination, the plaintiff must in turn show that the employer's articulated reasons are a mere pretext for a discriminatory purpose. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011-12 (1st Cir. 1979); *see also Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 432, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992). If there is no evidence of pretext, the defendant is entitled to dismissal as a matter of law. *Grimwood*, at 365; *Carle*, at 102. If there is evidence of pretext, the case must go to the jury. *Carle*, at 102; *see also Jones v. Kitsap Cy. Sanitary Landfill, Inc.*, 60 Wn. App. 369, 373, 803 P.2d 841 (1991).

In addition to the *McDonnell Douglas* test, the federal courts have recognized that a prima facie case of discrimination can be established by showing direct evidence of discriminatory intent. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985); *Buckley v. Hospital Corp. of Am., Inc.*, 758 F.2d 1525, 1529 (11th Cir. 1985). To establish a prima facie case of discrimination by direct evidence, a plaintiff must provide direct evidence that the defendant acted with a discriminatory motive and that the discriminatory motivation was a "significant or substantial factor in an employment decision . . .". *Buckley*, at 1530 (quoting *Lee v. Russell Cy. Bd. of Educ.*, 684 F.2d 769, 774 (11th Cir. 1982)). Once these factors are established, the defendant must show, by a preponderance of the evidence, that the same decision would have been reached absent the discriminatory factor. *Buckley*, at 1530. In the face of such evidence, the case goes to the jury. *Buckley*, at 1530.

The *McDonnell Douglas* standard and the direct evidence method are merely alternative ways of establishing a prima facie case. Once the plaintiff has established a prima facie case and the defendant has produced evidence of a nondiscriminatory reason for its action, the burden-shifting scheme "drops from the case". This is so whether the plaintiff has established a prima facie case by meeting the require-

ments under *McDonnell Douglas* or the direct evidence method. *Burdine*, at 255 n.10; *Buckley*, at 1530. The plaintiff then bears the burden of proving the ultimate fact — that the defendant intentionally discriminated against the plaintiff. *Burdine*, at 256.

In this case, plaintiff survived a motion for summary judgment on her marital discrimination claim. Regardless of whether she met the *McDonnell Douglas* requirements or produced direct evidence of discrimination, once the trial court determined that a question of fact remained as to whether the employment action taken by EECU constituted discrimination, the shifting burdens described above "dropped from the case". Plaintiff then was required to bear the ultimate burden of proving discrimination to the jury.

At trial, the defendant raised evidence of business necessity. Since the ultimate burden of proving discrimination rests with the plaintiff, we conclude that the burden of proof on the issue of business necessity also rests with the plaintiff in a marital discrimination case. As stated earlier, evidence of "business necessity" may justify discrimination on the basis of marital status. RCW 49.60.180 provides in part that

> [i]t is an unfair practice for any employer:
> (1) To refuse to hire any person because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap, *unless based upon a bona fide occupational qualification* . . .[.]

(Italics ours.)

While bona fide occupational qualification is not defined by the statute, WAC 162-16-150 provides some guidance to its meaning in the area of marital status discrimination. The code points out that there are circumstances where a "business necessity may justify action on the basis of what the spouse does . . .". WAC 162-16-150(2). Where this is so, the action will fall within the bona fide occupational qualification exception.[4]

---

[4]Although both parties addressed WAC 162-16-150 in their briefs, neither party challenged the regulation. Accordingly, we assume, but do not decide, that the regulation properly states the law to be applied in this case.

The defendant presented sufficient evidence in this case to raise a question of fact with respect to "business necessity", and the jury was instructed on this justification.[5] The court then assigned the burden of proving the existence of a business necessity reason to the defendant. We conclude that this was error. The defendant should bear the burden of proof only where it asserts an "affirmative defense".

In determining whether a statutory exception such as "business necessity" is an affirmative defense, the court looks to (1) whether the statute reflects a legislative intent to treat absence of the exception or the existence of a justification as one of the elements of a cause of action or (2) whether the justification negates an element of the action which the plaintiff must prove. *State v. McCullum*, 98 Wn.2d 484, 490, 656 P.2d 1064 (1983). The question in *McCullum* was whether the defendant or the prosecution carried the burden of proof on the issue of self-defense. The court concluded that self-defense could negate the statutory intent required for conviction of first degree murder. Therefore, since the prosecution carries the ultimate burden of proof of murder, the prosecution was required to prove the absence of self-defense to prevail.

While *McCullum* involved a criminal statute, its analysis is equally applicable here. A bona fide occupational qualification is a statutory justification for discrimination. Since the ultimate burden to prove discrimination rests with the plaintiff, we find that absence of this justification is a statutory requirement for proof of marital status discrimination. Thus, the jury should be instructed that the plaintiff must prove (1) that the employer discriminated against her based on her marital status and (2) that this discrimination was not justified or excused by "business necessity".

This is consistent with the position articulated by the United States Supreme Court in *Wards Cove Packing Co. v.*

---

[5]There is no issue as to whether the evidence presented was sufficient to support an instruction since the plaintiff did not except to the giving of the "business necessity" instruction.

*Atonio*, 490 U.S. 642, 104 L. Ed. 2d 733, 109 S. Ct. 2115 (1989). There the Court made it clear that when the cases speak of

> an employer's "burden of proof" with respect to a legitimate business justification defense, see, *e. g.*, *Dothard* v. *Rawlinson*, 433 U. S. 321, 329 (1977), they should have been understood to mean an employer's production — but not persuasion — burden. Cf., *e. g.*, *NLRB* v. *Transportation Management Corp.*, 462 U. S. 393, 404, n.7 (1983).

*Wards Cove,* at 660. The burden of persuasion must remain with the plaintiff since it is he who must prove that discrimination triggered the employment decision. *Wards Cove,* at 660. The court's instruction to the jury in this case required the defendant to prove that business necessity justified its employment action. The court should have required the plaintiff to prove the absence of the business necessity exception. This misstatement of the burden of proof was error, mandating a new trial. *Loeb,* at 1012.

EECU argues next that the trial court erred in failing to instruct the jury that the plaintiff must prove that the claim of business necessity was a pretext for an intentionally discriminatory act. As explained, however, the need to prove pretext "drops from the case" once the case goes to the jury. *Burdine,* at 255 n.10. This was reaffirmed recently in *St. Mary's Honor Ctr. v. Hicks,* ___ U.S. ___, 125 L. Ed. 2d 407, 416, 113 S. Ct. 2742, 2747 (1993). Following trial to the bench in that case, the federal district court judge held that the plaintiff had failed to carry his ultimate burden of showing that the adverse actions taken against him were racially motivated. The Court of Appeals reversed, holding that once the plaintiff proved that the reasons given by the defendant were pretextual, he was entitled to judgment as a matter of law. *St. Mary's,* 113 S. Ct. at 2748.

The Supreme Court reversed the Court of Appeals, holding that proof of pretext was not adequate to entitle a plaintiff to judgment as a matter of law in a discrimination case. Noting that Congress had recently provided a right to jury trials in title VII cases, the Court warned against making the inquiry in discrimination cases more difficult by confus-

ing the rules governing "basic allocation of burdens and order of presentation of proof" with the ultimate question of fact; whether the defendant intentionally discriminated against the plaintiff. *St. Mary's*, 113 S. Ct. at 2756; *see also Aikens*, at 716.

While the plaintiff must prove pretext under *McDonnell Douglas* to survive a motion for judgment as a matter of law, his or her burden at trial is to prove that the employer intentionally discriminated. *See Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 524, 832 P.2d 537 (1992), *review granted*, 120 Wn.2d 1019 (1993). We conclude, therefore, that a separate instruction on pretext was unnecessary and that the trial court here did not err in declining to give such an instruction.

EECU raises a third issue regarding the court's instructions to the jury, arguing here that the trial court erred in failing to give its proposed instruction defining business necessity. The proposed instruction included examples of situations where business necessity would not make marital status discrimination an unfair practice. These examples were drawn from WAC 162-16-150(3)(b). EECU's proposed instruction provided as follows:

> The plaintiff has the burden of proving that EECU intentionally discriminated against Peggy Kastanis on the basis of her marital status. If you find that EECU intentionally discriminated against Peggy Kastanis on the basis of her marital status, your verdict should be in favor of the plaintiff unless you find that the decision to request Peggy Kastanis' resignation was motivated by business necessity or a bona fide occupational qualification.
>
> Business necessity is defined as a need to avoid a business related conflict of interest, or the reality or appearance of improper influence or favor, such as:
> 1) the ability of one spouse to supervise, appoint, remove, or discipline the other; or
> 2) a situation where one spouse would be responsible for auditing the work of the other; or
> 3) an actual or reasonably foreseeable conflict between the interests of EECU and the plaintiffs.

Defendant's Proposed Jury Instructions; Clerk's Papers, at 288-89.

The trial court instead gave an instruction that provided a more general definition of business necessity. The definition was drawn from WAC 162-16-150(2), and provided as follows:

> The defendant claims the defense of business necessity and that therefore the termination of plaintiff is not unlawful discrimination. The defense of "business necessity" provides that there are certain circumstances where business necessity may justify action on the basis of what a spouse does, and where this is so the employer's action taken with respect to an employee will be considered to be not unlawfully discriminatory.
>
> "Business necessity" means those circumstances where an employer's actions are based upon a compelling and essential need to avoid business-related conflicts of interest, or to avoid the reality or appearance of improper influence or favor. Where business necessity requires the limitation of employment opportunity of spouses, the means chosen to meet the business necessity shall be those which have the least adverse impact on spouses or members of either sex.

Instruction 10; Clerk's Papers, at 362.

In response to EECU's exception to the court's failure to give its instruction on business necessity, the trial court responded that the examples provided in the proposed instruction were not relevant. The trial court concluded that the examples would be relevant only if the employer had an anti-nepotism policy in place, and based its conclusion on the language preceding the examples in WAC 162-16-150(3)(b). The administrative code states that "[t]he following are examples of business necessity situations where it is not an unfair practice for an employer *to impose rules* limiting the employment of spouses . . .". (Italics ours.) WAC 162-16-150(3)(b).

Despite this reference to rules, it would appear that the examples of business necessity given could be applicable, and relevant, regardless of the express rules in place governing nepotism. Indeed, under the evidence provided in the present case, the examples were relevant. EECU introduced evidence showing that Dean Kastanis, as CEO, had advisory authority over the accounting manager, and also showed that the CEO and accounting manager were responsible for auditing each other's work. EECU also indicated that the

Board was concerned about potential conflicts of interest. This evidence parallels the examples of business necessity situations set forth in WAC 162-16-150(3)(b) and EECU's proposed instruction. To apply the examples in WAC 162-16-150 only where a policy or rule exists appears contrary to the intent of RCW 49.60.180.

■ Plaintiff argues that regardless of the relevance of the proposed examples, they were properly excluded because they would have been a prohibited comment on the evidence had they been included in the court's instruction. Article 4, section 16 of the Washington Constitution prohibits judges from charging juries with respect to matters of fact, or commenting thereon, and mandates that they declare the law. *Hizey v. Carpenter*, 119 Wn.2d 251, 271, 830 P.2d 646 (1992); *Hamilton v. Department of Labor & Indus.*, 111 Wn.2d 569, 570, 761 P.2d 618 (1988). An instruction that does no more than accurately state the law pertaining to an issue does not constitute an impermissible comment on the evidence. *Hamilton*, at 571; *State v. Hughes*, 106 Wn.2d 176, 193, 721 P.2d 902 (1986). The examples proposed were taken directly out of WAC 162-16-150(3)(b) and would not have constituted a comment on the evidence had they been included in the court's instruction.

This court has stated repeatedly that it is not error to instruct in the language of the controlling statute. *Petersen v. State*, 100 Wn.2d 421, 432, 671 P.2d 230 (1983); *Wilson v. Key Tronic Corp.*, 40 Wn. App. 802, 812, 701 P.2d 518 (1985). It is important to add, however, that while the court could have included the examples of business necessity situations set forth in the administrative code, it was not compelled to do so. While it is proper for a court to instruct in the language of a statute, it is not required to do so. *Lindsey v. Elkins*, 154 Wash. 588, 607, 283 P. 447 (1929); *State ex rel. Taylor v. Reay*, 61 Wn. App. 141, 147, 810 P.2d 512, *review denied*, 117 Wn.2d 1012 (1991).

This is not a case where the absence of the examples meant that EECU was unable to present its theory of the

case to the jury. *See Cresap v. Pacific Inland Nav. Co.*, 78 Wn.2d 563, 566-67, 478 P.2d 223 (1970); *Dabroe v. Rhodes Co.*, 64 Wn.2d 431, 433-35, 392 P.2d 317 (1964) (court's general instructions did not allow plaintiffs to present their theory of the case). The court's instruction, based on language in WAC 162-16-150(2), stated that business necessity includes circumstances where an employer's actions are based on an essential need "to avoid business-related conflicts of interest, or to avoid the reality or appearance of improper influence or favor." Clerk's Papers, at 362. This instruction was sufficient to remind the jury of the credit union's concerns about the marriage of its CEO and accounting manager, and the trial court did not err in failing to include the more detailed examples of business necessity in EECU's proposed instruction.

■ Plaintiff argues further that the proposed instruction was properly refused because it contained an inaccurate statement of the law. The proposed instruction stated that bona fide occupational qualifications "are those reasonably necessary to the normal operation of the business." Defendant's Proposed Jury Instructions; Clerk's Papers, at 288. Business necessity can only qualify as a bona fide occupational qualification if the employer's actions are based upon a "compelling and essential need to avoid business-related conflicts of interest, or to avoid the reality or appearance of improper influence or favor." WAC 162-16-150(2). The statement in the proposed instruction that bona fide occupational qualifications are those "reasonably necessary" to the normal operation of the business does not reflect the requirement that such qualifications be "compelling and essential" as set forth in WAC 162-16-150(2). Thus, plaintiff is correct in arguing that the proposed instruction did not accurately state the law.

■ Plaintiff also contends that the proposed instruction erred in stating that EECU need only "honestly and reasonably believe" that the decision to request her resignation was based on business necessity or a bona fide occupational qualification. We agree that EECU must do more than

honestly and reasonably believe that its decision was based on business necessity. This court recently held that a good faith belief is not a defense in a case alleging a discriminatory discharge based on national origin. *Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 522, 844 P.2d 389 (1993). The employer must demonstrate a factual basis for an employee's discharge in a discrimination case. *Xieng,* at 522. This is in keeping with the WAC requirement that a discharge based on business necessity be based on a "compelling and essential" need to avoid conflicts of interest or undue favoritism. WAC 162-16-150(2). An honest belief that discharge is necessary is insufficient to justify discharge based on marital status.

It is well settled that it is not error to refuse an instruction which incorrectly states the law. *Mieske v. Bartell Drug Co.*, 92 Wn.2d 40, 46, 593 P.2d 1308, 6 A.L.R.4th 923 (1979); *Vogel v. Alaska S.S. Co.*, 69 Wn.2d 497, 503, 419 P.2d 141 (1966). Thus, because of the legal errors it contained, EECU's instruction on business necessity was properly refused.

 EECU also claims that its proposed instructions on business judgment were improperly refused. Since EECU never excepted to the trial court's decision not to give those proposed instructions, we need not reach the merits of this issue. *See St. Paul Mercury Ins. Co. v. Salovich*, 41 Wn. App. 652, 658, 705 P.2d 812, *review denied*, 104 Wn.2d 1029 (1985); *Stuart v. Consolidated Foods Corp.*, 6 Wn. App. 841, 846, 496 P.2d 527, *review denied*, 81 Wn.2d 1002 (1972).

EECU next contends that the trial court erred in failing to include a jury instruction stating that plaintiff's employment was terminable at will. In Washington, an employer has the right to discharge an employee, with or without cause, in the absence of a contract. Case law has established, however, that the rule is subject to certain exceptions, none of which apply in this case. *See Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 229-31, 685 P.2d 1081 (1984); *see also, e.g., Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 826 P.2d 664 (1992); *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991). In addi-

tion, the Legislature has created other exceptions to the terminable-at-will doctrine. Washington law prohibits discharge based on an employee's age, sex, marital status, race, creed, color, national origin, or the presence of sensory, mental, or physical handicap. RCW 49.60.180(2); *Roberts v. ARCO*, 88 Wn.2d 887, 891 n.1, 568 P.2d 764 (1977).

In arguing that a terminable-at-will instruction should have been given, EECU argues that the instruction applies "because Ms. Kastanis was not protected by an employment contract and could be terminated by the employer without cause. The credit union is liable only if it terminated her as a result of unlawful discrimination." Opening Brief of Appellant, at 36. The jury was so informed, since the court's instructions made it clear that unless plaintiff proved that her termination was based on unlawful discrimination, the verdict should be for EECU. There was no need for a further instruction on this issue, and we find no error in the court's refusal to give the proposed terminable-at-will instruction.

EECU next argues that the trial court should have limited recovery of damages to those damages incurred before EECU offered reinstatement. The real issue here is whether plaintiff reasonably refused the reinstatement offer. The trial court instructed the jury that a reinstatement offer would terminate an employee's right to recover damages if the offer were unreasonably refused. The jury's award included damages incurred after the reinstatement offer and so was based on the implicit assumption that plaintiff reasonably refused reinstatement.

EECU argues that this instruction was in error and that the reasonableness issue should not have been submitted to the jury. According to EECU, the court should have ruled within its equitable jurisdiction that plaintiff could not recover damages after rejecting an unconditional offer of reinstatement, apparently without regard to the circumstances surrounding the offer.

Generally, the relevant period for measuring back pay liability is the time between the termination and the

plaintiff's action upon an offer of reinstatement. *Morris v. American Nat'l Can Corp.*, 952 F.2d 200, 202 (8th Cir. 1991); *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808 (8th Cir. 1982). If a plaintiff's rejection of a reinstatement offer is reasonable, however, the offer does not terminate the accrual of damages. *Morris*, at 202; *Fiedler*, at 808. It is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement. *Morris*, at 203; *Fiedler*, at 808; *see also EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 978 (5th Cir. 1984). While a decision to order reinstatement as a remedy is clearly within the equitable jurisdiction of a court, scrutiny of a refusal of reinstatement falls to the trier of fact. *See Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir.), *cert. denied*, ___ U.S. ___, 116 L. Ed. 2d 449, 112 S. Ct. 429 (1991); *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047 (1988).

EECU would have the court determine as a matter of law that the offer of reinstatement, regardless of the circumstances in which it was made or the circumstances surrounding its refusal, cut off back pay. The court properly refused to do so and properly accepted the jury's conclusion that the plaintiff's refusal of reinstatement was reasonable and did not toll the accrual of her damages.

## Attorney's Fees

Finally, EECU charges that the trial court erred in refusing to award attorney's fees to plaintiff for only the one claim on which she prevailed. Plaintiff sued EECU under four separate causes of action: marital status discrimination, wrongful discharge, sex discrimination, and intentional infliction of emotional distress. She recovered only under the claim of marital status discrimination. The trial court declined EECU's request to award plaintiff only those attorney's fees attributable to her successful claim.

This court has held that a plaintiff can be required to segregate its attorney's fees between successful and unsuccessful claims that allow for the award of fees. *Nordstrom,*

502

*Inc. v. Tampourlos*, 107 Wn.2d 735, 743-44, 733 P.2d 208 (1987); *Blair v. WSU*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987). If the claims are unrelated, the court should award only the fees reasonably attributable to the recovery. *Blair,* at 572. In *Blair,* the trial court found that the evidence presented and the attorney's fees incurred for the plaintiffs' successful and unsuccessful claims were inseparable. This court agreed and upheld the trial court's decision that the plaintiffs were entitled to all fees awarded. *Blair,* at 572.

Here, the trial court made no express finding that plaintiff's successful and unsuccessful claims were inseparable. Plaintiff prevailed only on one claim out of four. It does not appear that her successful and unsuccessful claims were inseparable, or that it would have been unnecessarily complex for her to have segregated her requests for attorney's fees among her four claims. Accordingly, we hold that the trial court erred in refusing to award plaintiff attorney's fees only for her successful claim of marital status discrimination.

Given our resolution of the above issues we need not address the remaining claims. We hereby reverse the judgment of the court in favor of the plaintiff.

UTTER, BRACHTENBACH, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

ANDERSEN, C.J., concurs in the result.

After modification, further reconsideration denied January 13, 1994.