959 P.2d 133 (1998)
91 Wash.App. 280
Catherine BRAND, Respondent,
v.
DEPARTMENT OF LABOR & INDUSTRIES OF the STATE OF WASHINGTON, Appellant.
No. 20996-9-II.
Court of Appeals of Washington, Division 2.
June 5, 1998.
As Amended on Denial of Rehearing September 11, 1998.
*136 Christine A. Foster, Foster & Associates, Psc, Seattle, Robert Joseph Penfield, Federal Way, for Respondent.
Martha Patricia Lantz, Atty. Gen. Office/Labor & Industries, Christine D. Gregoire, Attorney General, Olympia, for Appellant. *134
*135 SEINFELD, Judge.
The Department of Labor & Industries challenges the amount of attorney fees and costs that the trial court awarded Catherine Brand in this workers' compensation case. The Department contends that the trial court's findings did not adequately address the lodestar factors and that the trial court improperly awarded fees for work performed on issues that the jury rejected. We agree and remand for reconsideration of the amount of the award and for findings to support the award.

FACTS
In 1978, Brand sustained an on-the-job knee injury that led to lower back strain. The Department allowed her workers' compensation claim and paid for seven knee surgeries, along with time-loss compensation. In 1991, the Department closed Brand's claim, finding the treatment no longer necessary and no additional permanent partial disability.
In 1992, the Board of Industrial Insurance Appeals essentially affirmed the Department's order, making the following findings:
(1) no further treatment would benefit Brand's knee condition;
(2) the level of permanent partial impairment of Brand's knee was "30% of the amputation value of the left leg at or above the knee joint with functional stump";
(3) the level of permanent partial impairment with respect to her lower back condition was category one of the Washington Administrative Code's categories of permanent dorso-lumbar and lumbosacral impairments (WAC 296-20-280);[1]
(4) Brand was "capable of performing gainful employment on a reasonably continuous basis as an apartment manager and/or as a hotel/motel desk clerk."
Brand appealed the Board's determination to superior court, arguing that she was totally disabled and, thus, entitled to back time-loss compensation and a pension. In the alternative, she sought additional impairment awards for her knee and back.
The jury rejected Brand's claim that she was totally disabled and eligible for a pension. But it did increase the level of permanent partial impairment of Brand's knee from 30 percent to 40 percent. It also increased the level of lower back impairment from a category one to a category two. The jury's verdict resulted in an additional $3,120 one-time benefit for Brand as opposed to the pension valued at $113,583.64 and the interest on the back time-loss compensation that she would have received if the jury had found her to be totally disabled.
Tacoma counsel represented Brand in her appeal to the Board and initially in her appeal *137 to superior court, preparing for a jury trial three times. But each time the trial was continued. Because Tacoma counsel was unavailable for the fourth scheduled trial date, a Seattle attorney who specializes in workers' compensation cases handled the matter when it finally went to trial.
Following trial, Tacoma and Seattle counsel requested an award of costs totaling $1,949.09 and attorney fees totaling $40,394.50. The costs included $1,090.49 for the expert witness who testified in support of the total disability claim. The attorney fee request included $10,757.50 for Tacoma counsel (42.85 hours at $200 per hour for the lead attorney and 17.5 hours at $125 per hour for his associate) and $29,637.00 for Seattle counsel (110.8 hours at $185 with the 98.8 hours spent to the point of verdict increased by a 1.5 multiplier).
The trial court awarded all the litigation costs, but reduced the attorney fee request to $25,000, allocating $19,000 to Seattle counsel and $6,000 to Tacoma counsel. The court did not enter written findings and conclusions but made the following comments on the record.
THE COURT: Now let me talk. As I go through them and look at these things and I look at the rates, I still have troubles between Seattle and Tacoma rates sometimes. I think Seattle rates already have a lodestar built into them.
. . . .
I need to be right up front. It's only been four years that I have been on the bench. Again, I look at the issues and the resolution. I was concerned a little bit about [Tacoma counsel]. I never saw him in action or doing anything. I did see [Seattle counsel], and I think you did a very competent, capable job. [Tacoma counsel] did not, and yet he wants more money than you do. I understand you are raising your rate. You are making the lodestar bigger in Seattle, and I am not willing to go that far.
The total feeand I'm going to split it out and just tell you where I would come outwould be $25,000. And I would allocate 19,000 of that to [Seattle counsel] and 6,000 of that to [Tacoma counsel], because even though he had time sitting around in the courtroom, he in fact didn't do it, but turned it over to you two[.]
. . . .
Basically what I didand I'll be honest with you. I tend to round things off. I took your $185 an hour. You had 98.8 and you had 12 and a half, and I just don't think that's all there. I took 100 hours at $185 an hour. I put it at a little more than that. I came to 19,000. And like I said, I rounded it.
On the other side, I went down. I took [the associate] at less than that, and I also reduced [Tacoma counsel's], when I did my initial calculation, and I did that kind of arbitrarily. I did not put his full hours in. But in any event, the hours would not have been more than $185 an hour. It would not have been more for him than any of the prevailing trial attorneys.
Within the parameters of that, using his numbers, I put arbitrarily $100 an hour for [the associate] and I came out to a little over $10,000. I, frankly, reduced those, because of all the stand-around time that was not productive time.
Counsel for the Department then asked whether the court was making an explicit finding "that the plaintiff can recover attorney's fees where they didn't win on those issues that they prepared?" The trial court responded, "On all issues, yes. I don't think they have to win on all of them to do it."
For ease in completing the judgment, the attorneys stipulated that the fees awarded to Seattle counsel were based upon 100 hours at $190 per hour rather than "100 hours at $185 an hour" plus "a little more than that" as actually stated by the court. The Department appeals.

DISCUSSION
The Department contends that the trial court failed to enter adequate findings in support of its fee award and that it erred by failing to segregate the costs and hours expended on Brand's unsuccessful total permanent disability claim from those spent on the successful increased impairment claims. It argues that the total award in this case is *138 inconsistent with the underlying purpose of RCW 51.52.130 and with related public policy concerning attorney fees.
In response, Brand contends that the trial court considered the relevant factors and in fact reduced the regular hourly rates and discounted some attorney hours actually expended, finding the time unnecessary, duplicative or unproductive. Brand further claims that "[t]here were no `unsuccessful claims' in this case." Finally, she argues that limiting attorney fees and costs based on the worker's degree of success would defeat RCW 51.52.130's purpose to guarantee competent counsel to injured workers.
Generally, a trial court may award attorney fees only when authorized by a contract, statute, or recognized ground of equity. State Farm Mut. Auto. Ins. Co. v. Johnson, 72 Wash.App. 580, 593, 871 P.2d 1066 (1994). Here, attorney fees are authorized by RCW 51.52.130, which provides in relevant part:
If, on appeal to the superior or appellate court from the decision and order of the [Industrial Insurance Appeals] board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, ... a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court. In fixing the fee the court shall take into consideration the fee or fees, if any, fixed by the director and the board for such attorney's services before the department and the board.
(emphasis added).
We review the reasonableness of an award of attorney fees under the abuse of discretion standard. Progressive Animal Welfare Soc'y v. University of Wash., 114 Wash.2d 677, 688, 790 P.2d 604 (1990); State Farm, 72 Wash.App. at 595, 871 P.2d 1066. Reasonableness depends upon the "particular circumstances of each individual case." Schmidt v. Cornerstone Inv., Inc., 115 Wash.2d 148, 169, 795 P.2d 1143 (1990). An attorney fee award is not sustainable if the court used an improper method of calculation or the record fails to contain a description of the method the trial court used to perform its calculations. Animal Welfare, 114 Wash.2d at 689, 790 P.2d 604 (improper to reduce fees based upon a failure to negotiate with keeper of public records); Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 65, 738 P.2d 665 (1987) (improper to reduce fee award on basis that issues presented are novel); State Farm, 72 Wash.App. at 595, 871 P.2d 1066 (fee award remanded in absence of findings stating basis for award); Bentzen v. Demmons, 68 Wash.App. 339, 350, 842 P.2d 1015 (1993) (fee award remanded in absence of findings stating basis for award).
In determining the amount of an award, the court must consider the purpose of the statute allowing for attorney fees. Absher Constr. Co. v. Kent Sch. Dist. No. 415, 79 Wash.App. 841, 846, 917 P.2d 1086 (1995) (citing Scott Fetzer Co. v. Weeks, 122 Wash.2d 141, 149, 859 P.2d 1210 (1993) (Fetzer II)). One recognized purpose of RCW 51.52.130 is "to provide court control over attorney fees for all successful claimants to prevent the charging of unreasonable fees." Spring v. Department of Labor & Indus., 39 Wash.App. 751, 757, 695 P.2d 612 (1985); Harbor Plywood Corp. v. Department of Labor & Indus., 48 Wash.2d 553, 559, 295 P.2d 310 (1956); Siegrist v. Simpson Timber Co., 39 Wash.App. 500, 504, 694 P.2d 1110 (1985); Simpson Timber Co. v. Smith, 37 Wash.App. 796, 798, 682 P.2d 969 (1984). Another recognized purpose is to "furnish an injured workman, who has been denied justice by the department, with competent counsel, without expense to him.'"[2]Harbor Plywood, 48 Wash.2d at 559, 295 P.2d 310 (emphasis added) (quoting Rehberger v. Department of Labor & Indus., 154 Wash. 659, 662, 283 P. 185 (1929)).

*139 A. LODESTAR EVALUATION
Washington courts have adopted the "lodestar" method as the preferred means of determining reasonable attorney fees. Scott Fetzer Co. v. Weeks, 114 Wash.2d 109, 124, 786 P.2d 265 (1990) (Fetzer I); Martinez v. City of Tacoma, 81 Wash.App. 228, 239, 914 P.2d 86, review denied, 130 Wash.2d 1010, 928 P.2d 415 (1996); Absher, 79 Wash.App. at 846-47, 917 P.2d 1086. The lodestar method is set out in Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 593-94, 675 P.2d 193 (1983):
Under this method, there are two principal steps to computing an award of fees. First, a "lodestar" fee is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit. Second the "lodestar" is adjusted up or down to reflect factors, such as the contingent nature of success in the lawsuit or the quality of legal representation, which have not already been taken into account in computing the "lodestar" and which are shown to warrant the adjustment by the party proposing it.
(citing Miles v. Sampson, 675 F.2d 5, 8 (1st Cir.1982)).
The attorneys involved in litigation must provide reasonable documentation of the work they performed before the court can determine the number of hours reasonably expended in the litigation. Bowers, 100 Wash.2d at 597, 675 P.2d 193. In this case, there is no challenge to the adequacy of the documentation.
The amount of time actually spent by a prevailing attorney is relevant, but not dispositive. Nordstrom, Inc. v. Tampourlos, 107 Wash.2d 735, 744, 733 P.2d 208 (1987). Particularly in cases where the law is settled, there is a "great hazard that the lawyers involved will spend undue amounts of time and unnecessary effort to present the case." Nordstrom, 107 Wash.2d at 744, 733 P.2d 208. Thus, the trial court should not include hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time in its calculation. Bowers, 100 Wash.2d at 597, 675 P.2d 193; see also Nordstrom, 107 Wash.2d at 744, 733 P.2d 208.
Once the court determines the hours reasonably expended, it multiplies this number by the reasonable hourly rate of compensation to arrive at the lodestar fee. Bowers, 100 Wash.2d at 597, 675 P.2d 193. Although the courts generally consider an attorney's established billing rate as reasonable, this evidence is not conclusive as to reasonableness. Bowers, 100 Wash.2d at 597, 675 P.2d 193.
In determining reasonableness, courts may consider the "level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case." Bowers, 100 Wash.2d at 597, 675 P.2d 193. The court needs to compute a reasonable hourly rate for each attorney that accounts for experience level. Each attorney's hourly rate may, in turn, vary with the type of work involved. Bowers, 100 Wash.2d at 597-98, 675 P.2d 193.

B. AWARD FOR WORK ON UNSUCCESSFUL CLAIMS
A court should not reduce a fee award of a plaintiff who has obtained excellent results simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). But if the plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be excessive. Hensley, 461 U.S. at 436, 103 S.Ct. 1933; Kastanis v. Educational Employees Credit Union, 122 Wash.2d 483, 502, 859 P.2d 26, 865 P.2d 507 (1993) (error to award employment discrimination plaintiff all her attorney fees when she prevailed on only one of four claims); Bowers, 100 Wash.2d at 597, 675 P.2d 193 (lodestar should not include hours expended on unsuccessful claims); see also Travis v. Washington Horse Breeders Ass'n, Inc., 111 Wash.2d 396, 410-11, 759 P.2d 418 (1988) (attorney fees should be awarded only for services related to causes of action that allow for fees); Dash Point Village Assoc. v. Exxon Corp., 86 Wash.App. *140 596, 611, 937 P.2d 1148 (1997) (attorney fees must reflect time spent only on issues for which fees authorized).
Congressional intent to limit fee awards to prevailing parties requires that courts award fees for services on successful claims only. Hensley, 461 U.S. at 435, 103 S.Ct. 1933. This applies even where plaintiff's claims are "interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436, 103 S.Ct. 1933; see also Fisher Properties, Inc. v. Arden-Mayfair, Inc., 106 Wash.2d 826, 850, 726 P.2d 8 (1986) (difficulty of apportioning time expended between interrelated claims does not justify fee award for claim for which fee award not authorized). Here, the Legislature provided for fees only to those plaintiffs who obtain "additional relief" on appeal; it did not authorize a fee award merely because it was "reasonable for a plaintiff to bring a lawsuit or [because] conscientious counsel tried the case with devotion and skill." Hensley, 461 U.S. at 436, 103 S.Ct. 1933.
When the "prevailing" plaintiff has succeeded on only some claims for relief, the court must address two questions. First, did the plaintiff fail to prevail on claims unrelated to the claims on which she succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? Hensley, 461 U.S. at 434, 103 S.Ct. 1933.
When the unsuccessful claims are unrelated to and distinctly different from the successful claims, a court should segregate the hours expended on a claim-by-claim basis. Hensley, 461 U.S. at 435, 103 S.Ct. 1933; see also Kastanis, 122 Wash.2d at 502, 859 P.2d 26, 865 P.2d 507; Blair v. Washington State Univ., 108 Wash.2d 558, 572, 740 P.2d 1379 (1987). But when a plaintiff's claim for relief involves a common core of facts and related legal theories, there is no precise rule or formula for taking into account the degree of success in a fee award. Hensley, 461 U.S. at 435-36, 103 S.Ct. 1933. Ultimately, the fee award must be reasonable in relation to the results obtained. Hensley, 461 U.S. at 440, 103 S.Ct. 1933.

C. APPLICATION HERE
Brand contends that the trial court applied the lodestar method properly. She points out that the trial court reduced two of the attorneys' regular hourly rates, and it discounted the hours actually expended by all three attorneys for unnecessary, duplicative, or unproductive time.
1) Lodestar Factors
First, we agree with Brand that the record on review is sufficiently detailed for appellate review. See Austin v. U.S. Bank, 73 Wash.App. 293, 310, 869 P.2d 404 (1994) (attorney fee award remanded where no affidavits or times sheets supported fee request); Rhinehart v. Seattle Times, 59 Wash. App. 332, 342, 798 P.2d 1155 (1990) (attorney fee award remanded where record on appeal insufficient for proper review). Here, unlike in Austin and Rhinehart, the record on appeal contains a cost bill, counsels' affidavit and declaration that contained a detailed description of the hours expended by counsels' respective offices, and the Department's memorandum opposing Brand's fee request. The record also includes a transcript of the hearing on attorney fees.
But the trial court's explanation as to the basis of the fee award is inadequate. See State Farm Mut. Auto. Ins. Co. v. Johnson, 72 Wash.App. 580, 595, 871 P.2d 1066 (1994); Bentzen v. Demmons, 68 Wash.App. 339, 350, 842 P.2d 1015 (1993). The trial court reduced Seattle counsel's requested hours from 111.3 to 100, stating: "I just don't think that's all there." And it reduced Tacoma counsels' hours, acknowledging: "I did that kind of arbitrarily. I did not put his full hours in." Given that the two attorneys in the Tacoma office billed at different rates, we are unable to determine from the record the extent to which the trial court reduced Tacoma counsels' hours.[3] We know only that it awarded the Tacoma law firm $6,000.
*141 Without more detailed findings as to the hourly rate and total hours of each attorney and the basis for making those determinations, we are unable to sustain the award. We cannot review the extent to which the court took into account (1) any duplicative or unnecessary effort; (2) the skill level required in this particular case; (3) the terms of the fee agreement between the attorneys and Brand; (4) the fees customarily charged for similar services; (5) the amount at stake; (6) the result obtained; (7) the attorneys' reputations; (8) the undesirability of the case; and (9) any other relevant factors. See Fetzer I, 114 Wash.2d at 124, 786 P.2d 265; Nordstrom, 107 Wash.2d at 744, 733 P.2d 208; Bowers, 100 Wash.2d at 597, 675 P.2d 193; see also RPC 1.5(a).
(2) Unsuccessful Claims
Brand contends that "the only unsuccessful claims for which attorney fees should be discounted are those claims which are wholly distinct from successful claims." We disagree.
In Hensley, 461 U.S. at 440, 103 S.Ct. 1933, the United States Supreme Court held:
[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees.... Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

Here, Brand obtained less than three percent of the relief she sought. In light of her very limited success at trial, and in the absence of any compelling reasons justifying an award for time spent on unsuccessful claims, she was entitled only to those fees related to her successful claim. Hensley, 461 U.S. at 436-37, 103 S.Ct. 1933; Kastanis, 122 Wash.2d at 502, 859 P.2d 26, 865 P.2d 507.
Further, Brand's argument that "it would have been difficult if not impossible to accurately segregate the work ... relative to the different benefits at issue" is unpersuasive. Hensley, 461 U.S. at 436-37, 103 S.Ct. 1933; Fisher Properties, 106 Wash.2d at 850, 726 P.2d 8. The court need not apply a "precise rule or formula"; it "may simply reduce the award to account for the limited success." Hensley, 461 U.S. at 436-37, 103 S.Ct. 1933.
RCW 51.52.130 and the related public policy concerning attorney fees support this outcome. See Spring v. Department of Labor & Indus., 39 Wash.App. 751, 757, 695 P.2d 612 (1985) (purpose of RCW 51.52.130 is to prevent charging of unreasonable fees). The Legislature intended that injured workers have competent counsel without cost to them only when the worker "has been denied justice by the department." Harbor Plywood Corp. v. Department of Labor & Indus., 48 Wash.2d 553, 559, 295 P.2d 310 (1956).
The jury here determined that the Department did not improperly deny Brand benefits for permanent total disability. The denial of attorney fees for her unsuccessful claim "is consistent with the underlying philosophy of fee shifting: to discourage weak cases, encourage settlements, and restore a wronged party to its original position." Marassi v. Lau, 71 Wash.App. 912, 918, 859 P.2d 605 (1993) (citing Talmadge, The Award of Attorneys' Fees in Civil Litigation in Washington, 16 Gonz. L.Rev. 57, 69-70 (1980)).
The cases Bland relies upon are distinguishable. See Blair, 108 Wash.2d at 572, 740 P.2d 1379; Schumacher Painting Co. v. First Union Management, Inc., 69 Wash. App. 693, 702, 850 P.2d 1361 (1993). In *142 Blair, the court found that "the plaintiffs had prevailed on many significant issues" and that the claims were inseparable. 108 Wash.2d at 572, 740 P.2d 1379. And the Schumacher court sustained the fee award because "fees awarded to a prevailing party should not be ... reduced when the party was not successful on only one of several related claims." 69 Wash.App. at 702, 850 P.2d 1361 (citing Hensley, 461 U.S. at 440, 103 S.Ct. 1933). Further, it appears to us that the Schumacher court misread the holding of Hensley when it stated that:
Reductions in fees are appropriate only when the fees are unreasonable because they were generated by claims that were distinct in all respects from successful claims.
69 Wash.App. at 702, 850 P.2d 1361 (emphasis added). As explained above, Hensley supports the award of fees to prevailing parties on successful claims only, unless the plaintiff has won substantial relief on related claims.
We agree with Brand that the Travis and Nordstrom cases are distinguishable; they turn on the proposition that it is error to award attorney fees for hours expended on claims for which there is no attorney fee authority. Travis, 111 Wash.2d at 410, 759 P.2d 418; Nordstrom, Inc. v. Tampourlos, 107 Wash.2d 735, 743-44, 733 P.2d 208 (1987). But they do not contradict the Department's position and, thus, are not dispositive. As the Hensley court stated, "[a] reduced fee award is appropriate if the relief... is limited in comparison to the scope of the litigation as a whole." 461 U.S. at 440, 103 S.Ct. 1933. "This will be true even where the plaintiff's claims were interrelated." Hensley, 461 U.S. at 436, 103 S.Ct. 1933.
Kastanis also has some distinguishing characteristics. Primarily, in Kastanis there was no attorney fee authority for two of the unsuccessful claims. But the plaintiff's unsuccessful sex discrimination claim had the same attorney fee authority as her successful marital status discrimination claim. 122 Wash.2d at 487, 502, 859 P.2d 26, 865 P.2d 507. And both of these claims involved a common core of facts. Nonetheless, the reviewing court found that the trial court erred in "refusing to award plaintiff attorney's fees only for her successful claim of marital status discrimination." Kastanis, 122 Wash.2d at 502, 859 P.2d 26, 865 P.2d 507 (emphasis added). Despite the interrelated nature of the plaintiff's claims, the court did not believe it would have been "unnecessarily complex for her to have segregated her requests for attorney's fees among her four claims." Kastanis, 122 Wash.2d at 502, 859 P.2d 26, 865 P.2d 507.
As in Kastanis, the trial court here erred in awarding fees for all of Brand's claims for relief. The flaw in Brand's attempt to characterize her appeal as involving only one claim is highlighted by her argument that she "could not have won all the benefits at issue in her case."

II. ATTORNEY FEES ON APPEAL
Brand requests her fees on appeal pursuant to RCW 51.52.130. Because we have not sustained her right to attorney fee relief, she is not entitled to fees on appeal.

CONCLUSION
Because of the inadequacy of the trial court's analysis of the lodestar factors, we reverse and remand for recalculation of the award. The trial court's reasoning should be on the record, and the court's written findings should discuss each of the relevant lodestar factors set forth in Bowers, 100 Wash.2d at 597, 675 P.2d 193. The findings also should explain the court's method of segregating costs and fees attributable to successful claims from those solely attributable to unsuccessful claims. Finally, the findings should contain reasons supporting the award, if any, of fees for unsuccessful claims.
Accordingly, we reverse the award of attorney fees and remand for further consideration consistent with this opinion.
BRIDGEWATER, Acting C.J., and ARMSTRONG, J., concur.
NOTES
[1] Categories (1) and (2), relevant here, provide:

"(1) No objective clinical findings. Subjective complaints and/or sensory losses may be present or absent.
"(2) Mild low back impairment, with mild intermittent objective clinical findings of such impairment but no significant x-ray findings and no significant objective motor loss. Subjective complaints and/or sensory losses may be present." WAC 296-20-280.
[2] Compare Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (purpose of Civil Rights Attorney's Fees Award Act is "to ensure `effective access to the judicial process' for persons with civil rights grievances"); Scott Fetzer Co. v. Weeks, 114 Wash.2d 109, 122, 786 P.2d 265 (1990) (purpose of long-arm statute's fee provision is to compensate defendants for the added expense caused by plaintiffs' assertions of long-arm jurisdiction); and Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 594, 675 P.2d 193 (1983) (purpose of Consumer Protection Act's fee award provision is to encourage active enforcement of the Act).
[3] Assuming that the court reduced Tacoma counsels' hours proportionately, 71 percent or $4,270 of the $6,000 was for the principal and 29 percent or $1,740 for the associate. This would almost fully compensate the associate but reduce the principal's hours by almost half (42.85 to 23.02).