[No. 29733-3-I.    Division One.    July 25, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL RAYMOND WALKER, *Appellant*.

*Kathleen Anne Barry* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lisa Johnson, Deputy,* for respondent.

PEKELIS, A.C.J. — Michael Raymond Walker (Walker) appeals his first degree theft conviction. Walker contends that the trial court erred when it allowed the charge to be amended from taking a motor vehicle without permission to first degree theft. He argues that the statutes are concurrent, and therefore he was required to be charged with the specific offense of taking a motor vehicle without permission. Walker also contends that the trial court erred when it admitted into evidence facts relating to the uncharged theft of the victim's shop tools for the limited purpose of proving his intent to take the victim's car.

Walker and Joe Velasquez (Velasquez), the victim, had a professional and personal relationship. In April 1990, Walker was employed part time at Velasquez' automobile transmission shop. On occasion, Velasquez allowed Walker to borrow his vehicles, including his 1984 Lincoln Town Car (the Lincoln), for business and pleasure. For example, in April 1990, Walker had permission to use one of Velasquez' trucks.

On Friday, April 27, 1990, Walker went to Velasquez' residence at approximately 7 p.m. During the visit, Walker asked to borrow the Lincoln to pick up his girlfriend. Velasquez replied, "[N]o, definitely not". When Walker repeated his request, Velasquez replied, "[N]o, you are not using it". During the conversation, Velasquez informed Walker that he and his girlfriend were going dancing at a local restaurant. Walker replied that he would see him there.

When Walker arrived at the restaurant, he renewed his request to use the Lincoln. Despite Velasquez' refusal, Walker repeated his request two or three additional times, to which Velasquez stated, "[N]o, you are not using my car, it's not going to happen, so don't even bother asking me again". Velasquez then informed Walker that he and his girlfriend were going home to "hot-tub".

Later that evening, Walker and his girlfriend arrived at Velasquez' residence. They "hot-tubbed" until Velasquez announced that he was retiring. About 10 to 15 minutes

later, Velasquez, who was upstairs in his bedroom, heard Walker drive away in the loaned truck.

The next morning, Velasquez discovered the Lincoln missing and the loaned truck parked on his street. Assuming that Walker would return with the Lincoln on Monday, Velasquez did not immediately report it stolen. However, when Velasquez arrived at his shop on Monday morning, not only were Walker and the Lincoln still missing, but his shop tools were missing as well. Velasquez then reported the theft of the car and the tools.

On May 1, 1990, Walker was stopped in the Los Angeles area while driving the Lincoln. He was arrested after a license check revealed that the Lincoln was stolen. Some of Velasquez' shop tools were found in the car's trunk.

On October 24, 1990, Walker was charged by information with taking a motor vehicle without permission contrary to RCW 9A.56.070. In a pretrial motion, the State moved to amend the charge to theft in the first degree contrary to RCW 9A.56.020(1)(a) and RCW 9A.56.030(1)(a). Defense counsel objected, arguing that the two statutory crimes were concurrent, and therefore the State was required to charge the specific crime of taking a motor vehicle without permission. The court granted the motion to amend.

At the pretrial hearing, the State indicated that it planned to introduce evidence of the uncharged theft of Velasquez' shop tools as proof of Walker's intent to take the Lincoln. Over defense counsel's objection, the court ruled that the evidence would be admissible for the limited purpose of proving Walker's intent to take the Lincoln.

At trial, Velasquez testified that he did not remember whether he had given Walker the keys to his shop or whether the keys were on a key hook at his home, which Walker would have had access to on April 27, 1990. Velasquez testified that the Lincoln was worth $7,500 to $8,000. Kent Police Detective Marvin Wilson testified that the Lincoln had a "blue book" value of $6,300.

Los Angeles County Deputy Sheriff Mark Lillienfield testified that when he arrested Walker, some tools were in the

Lincoln. Renton Police Officer Steven Higgins testified to having taken Velasquez' report of a tool theft. He testified that when he went to Velasquez' shop to investigate, Velasquez showed him three empty tool boxes.[1]

Prior to deliberations, the court instructed the jury:

> Evidence has been introduced in this case on the subject of Joe Velasquez' automobile shop tools for the limited purpose of whether it tends to prove intent or motive of the defendant. You must not consider this evidence for any other purpose.

The jury convicted Walker of first degree theft. Walker was sentenced within the standard range.

Walker appeals.

### CONCURRENT STATUTES

Walker assigns error to the trial court's having granted the State's motion to amend the charge from taking a motor vehicle without permission to first degree theft.[2] Walker argues that the statutes are concurrent, thereby requiring the State to have charged the specific crime of taking a motor vehicle without permission.

■ It is a well-settled rule of statutory construction that where a special statute punishes conduct that is punished under a general statute, the defendant must be charged under the special statute. *State v. Williams*, 62 Wn. App. 748, 750, 815 P.2d 825 (1991), *review denied*, 118 Wn.2d 1019 (1992). In order for the statutes to be concurrent, each violation of the special statute must result in a violation of the general statute. *Williams*, at 750. In other words, "the special statute will supersede the general only '[s]o long as it is *not possible* to commit the special crime without also committing the general crime'." *Williams*, at 753-54 (quoting *State v. Shriner*, 101 Wn.2d 576, 583, 681 P.2d 237 (1984)). Additional elements in the special statute are irrelevant to this determination. *Shriner*, at 583.

---

[1]Apparently, the State could not charge the tool theft because Velasquez did not complete the necessary paperwork.

[2]Taking a motor vehicle without permission is a class C felony, RCW 9A.56.070(2), while first degree theft is a class B felony. RCW 9A.56.030(2).

In this case, we must determine whether every violation of RCW 9A.56.070, also known as the "joyriding" statute, will result in the violation of the first degree theft statute, RCW 9A.56.020(1)(a) and .030.

The joyriding statute can be violated by two alternative means. Under the "taking" prong, the elements are: (1) taking or driving away without the owner's permission, (2) a motor vehicle (3) intentionally. Under the riding prong, the elements are: (1) voluntarily riding in a motor vehicle (2) with knowledge that it was unlawfully taken. RCW 9A.56.070(1).

The applicable elements of theft in the first degree are: (1) wrongfully obtaining or exerting unauthorized control over (2) the property of another valued in excess of $1,500 (3) with intent to deprive. RCW 9A.56.020(1)(a), .030(1)(a).

■ We conclude that the statutes are not concurrent because every violation of the joyriding statute will not result in the commission of first degree theft. First, if a person intentionally takes without permission an automobile that is less than $1,500 in value, he or she cannot be charged with first degree theft. Consequently, the joyriding statute can be violated without violating the first degree theft statute.[3]

Second, the two offenses are distinguishable based on the *duration* of deprivation associated with the taking of another's automobile. In other words, the statutes proscribe different conduct. For instance, the joyriding statute would be violated by taking a motor vehicle without permission for a spin around the block. In contrast, the theft statute would be violated only if the defendant intended to deprive the owner of its use, as is the case when the motor vehicle is taken for a substantial period of time.

*State v. Clark*, 96 Wn.2d 686, 638 P.2d 572 (1982) supports our conclusion that the intent elements differ based on the

---

[3]*Shriner*, 101 Wn.2d at 576, which Walker relies on, is clearly distinguishable. There, the court held that criminal possession of a rented motor vehicle, RCW 9A.56.095, is concurrent with first degree theft. However that statute, unlike the joyriding statute, requires that the vehicle be valued in excess of $1,500, which also is an element of first degree theft.

duration of deprivation. Clark, who had permission to use the victim's car for a specific purpose provided that he return it by noon the same day, instead drove to Colorado. *Clark*, at 687. Clark was charged with, and convicted of, taking a motor vehicle without permission. The Washington Supreme Court held that Clark should have been charged with theft. *Clark*, at 691. The court explained that its holding avoided an expansive interpretation of the joyriding statute:

> [i]t would seem logical that RCW 9A.56.070(1) is intended only to prevent *the initially unauthorized use of a vehicle. Otherwise, the theft statute and the joyriding statute would proscribe the same conduct*, yet a defendant potentially could suffer a different penalty depending on which crime was charged.

(Italics ours.) *Clark*, at 691.

We reject Walker's contention that *State v. Komok*, 113 Wn.2d 810, 783 P.2d 1061 (1989) supports the proposition that the intent elements of the two statutes are identical. In *Komok*, the defendant argued, *inter alia*, that the information was constitutionally invalid because it did not include the common law language of "intent to permanently deprive". *Komok*, at 812. The court held that the Legislature did not intend RCW 9A.56.020(1) to retain the common law element of intent to "permanently" deprive. *Komok*, at 816-17.

However, in so holding, the court did not reach the issue before us nor did it purport to overrule those cases in which the theft statute was distinguished from the joyriding statute based on the intent element. *See, e.g., State v. Nelson*, 63 Wn.2d 188, 190, 386 P.2d 142 (1963) (joyriding is "distinguishable from larceny" based on the "intent to permanently deprive"); *State v. Williams*, 22 Wn. App. 197, 199, 588 P.2d 1201 (1978) ("joyriding is not a full-blown larcenous theft", its only difference is the nature of the intended deprivation, "*i.e.*, joyriding merely requires an intent to temporarily deprive."). As a result, we conclude that this distinction remains valid. While proof of intent to *permanently* deprive is not necessary under the theft statute, the "intent to deprive" element nevertheless implies that the deprivation be of a greater duration than that required for taking a

motor vehicle without permission. Accordingly, the joyriding statute proscribes *the initial* unauthorized use of an automobile, while the theft statute proscribes *the continued or permanent* unauthorized use of an automobile.

In conclusion, not every violation of the joyriding statute will result in a violation of the first degree theft statute. Therefore, the statutes are not concurrent and the trial court did not err in granting the State's motion to amend the charge to first degree theft.

### Admissibility of Uncharged Tool Theft

Walker contends that the trial court erred by allowing into evidence facts concerning the uncharged theft of the victim's tools for the limited purpose of proving his intent to take the Lincoln.

■ The admissibility of a defendant's other crimes or " 'prior bad acts' " falls within the trial court's sound discretion. *State v. Peerson*, 62 Wn. App. 755, 775, 816 P.2d 43 (1991), *review denied*, 118 Wn.2d 1012 (1992). Under ER 404(b), evidence of other crimes or "prior bad acts" is inadmissible to show that the defendant acted in conformity with his or her character, but is admissible for other purposes including motive, intent, identity, or res gestae. *State v. Mutchler*, 53 Wn. App. 898, 901, 771 P.2d 1168, *review denied*, 113 Wn.2d 1002 (1989).

■■ To decide whether such evidence is properly admissible, the trial court must engage in a twofold inquiry on the record. *Peerson*, 62 Wn. App. at 775. The trial court must first determine "whether the evidence is relevant to prove an essential element of the crime charged." *Peerson*, at 775. Evidence is relevant if (1) the purpose for which the evidence is offered is of consequence to the outcome of the action and (2) it tends to make the existence of the identified fact more or less probable. *Peerson*, at 775-76. The trial court next must balance the probative value of the evidence against its prejudicial effect under ER 403. *Peerson*, at 776. Evidence of uncharged crimes need only be proved by a

preponderance of the evidence. *See, e.g., State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981).

In support of his contention that the trial court erred in admitting evidence regarding the tool theft, Walker argues that (1) the State did not establish the tool theft by a preponderance of the evidence and (2) the prejudicial effect of the evidence outweighed its probative value.

As a threshold matter, the State contends that Walker did not object on the same grounds below and therefore is precluded from raising these objections on appeal. In general, an objection must be specific to preserve an issue for appeal. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). However, an appellate court may consider the propriety of a ruling on a general objection if the specific basis for the objection is " ' "apparent from the context" ' ". *State v. Braham*, 67 Wn. App. 930, 934-35, 841 P.2d 785 (1992) (quoting *State v. Pittman*, 54 Wn. App. 58, 66, 772 P.2d 516 (1989)); *see also State v. Black*, 109 Wn.2d 336, 340, 745 P.2d 12 (1987); ER 103(a)(1).

Defense counsel objected as follows:

> In a nutshell, my argument is we are going to have to end up trying a case uncharged with evidence I have not had made available to me yet and it will confuse the issue and the only way a jury with a limiting instruction, the only way the jury will take that is evidence of bad character and that is proscribed by the evidence rules.

It is apparent from the context that counsel objected to the prejudicial effect of the evidence. Although we are not convinced that counsel's remarks do constitute an objection to whether the State properly substantiated the tool theft, the State's proof was plainly sufficient nevertheless. In addition to Velasquez' testimony, the State presented (1) Deputy Sheriff Lillienfield's testimony that tools were found in the Lincoln when Walker was arrested in Los Angeles and (2) Officer Higgins' testimony that Velasquez had shown him three empty tool boxes when he investigated the tool theft at Velasquez' shop.

As for Walker's contention that the prejudicial effect of the tool theft outweighed its probative value, we reject Walker's argument that the evidence of the tool theft lacks any probative value because the uncharged crime was unsubstantiated. As discussed above, we find that the tool theft was substantiated.

■ We also reject Walker's contention that the evidence was prejudicial because the jury could have been confused as to which "crime was charged and what wrongdoing was proved". The court instructed the jury that the evidence of the tool theft was limited to proving Walker's intent to steal the Lincoln. In the absence of evidence to the contrary, we presume the jury acted in accordance with the instructions. *State v. Reay*, 61 Wn. App. 141, 150 n.6, 810 P.2d 512, *review denied*, 117 Wn.2d 1012 (1991). Thus, we conclude the trial court did not abuse its discretion in admitting evidence of the theft of Velasquez' tools.

Affirmed.

SCHOLFIELD and COLEMAN, JJ., concur.

Review denied at 125 Wn.2d 1015 (1995).