# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47207-4-II |
| Respondent, | |
| v. | |
| DOUGLAS MARK CORREA, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — Douglas Mark Correa appeals his motor vehicle theft jury conviction and the imposition of legal financial obligations (LFOs). He argues that (1) the charging document is constitutionally deficient, (2) the trial court abused its discretion by limiting his cross-examination of the victim, and (3) the trial court improperly imposed LFOs for witness fees and costs on appeal. Finding no error, we affirm his conviction and the trial LFOs, but decline to impose appellate costs.

## FACTS

Correa knew James Cushman through a mutual friend, Nikia Brown. On July 11, 2014, Correa asked to borrow Cushman's motorcycle. Cushman agreed, provided that Correa return the motorcycle that evening. Correa did not return the motorcycle or answer Cushman's calls over the next two days. On July 13, Cushman reported the theft to police. Cushman also searched for the motorcycle. When he saw a man driving it out of a trailer park, he called the police. The

police stopped the driver, Robert Stanfill, who said Correa had let him borrow the motorcycle. The police arrested Correa.

The State's charging document read,

**COUNT 1 - THEFT OF MOTOR VEHICLE, RCW 9A.56.065(1), RCW 9A.56.020(1)(a) - CLASS B FELONY**:
In that the defendant, DOUGLAS MARK CORREA, in the State of Washington, on or about July 11, 2014, did wrongfully obtain or exert unauthorized control over the motor vehicle of another, with intent to deprive said person of such motor vehicle.

Clerk's Papers (CP) at 6. Correa did not challenge the charging document nor did he request a bill of particulars. The State's probable cause declaration, filed the day before the charging document, stated that the stolen motorcycle was a Kawasaki ZX600 and that Cushman was the legal owner who reported the theft on July 13 in Lacey, Washington.

Cushman, Stanfill, and the arresting officer testified at trial. Cushman testified that Correa asked to borrow the motorcycle to go to the grocery store and Cushman reluctantly agreed if Correa would be back in 45 minutes. After calling Correa numerous times over the next two days, Cushman realized that Correa may have stolen the motorcycle. Stanfill testified that Correa told him he had borrowed the motorcycle for three days and allowed Stanfill to use the motorcycle. The arresting officer testified that after she read Correa his *Miranda*[1] rights, Correa said that Cushman owed him money and he was just teaching Cushman a lesson, but planned to return the motorcycle.

On cross-examination, defense counsel asked Cushman if he borrowed money from Correa in the past. The trial court sustained the State's relevancy objection. Defense counsel argued that

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Cushman's borrowing and repaying Correa late was relevant to show that Correa did not intend to steal the motorcycle, but intended to return the motorcycle late to show Cushman how it felt to be deprived of something for longer than agreed. The State argued that Cushman's testimony about the money was irrelevant because the crime charged required only proof of intent to deprive Cushman of the motorcycle rather than intent to permanently deprive. The trial court sustained the objection, but also stated it would not prevent Correa from putting on his defense.

Correa testified and called Brown as a witness. Brown testified that Correa loaned Cushman money and though Cushman promised to repay that day, he did not do so for three or four days. Correa testified that he knew Cushman expected him to bring the motorcycle "right back," but that he planned to keep the motorcycle for three days because that is how long Cushman took to pay back the money. Correa explained that he wanted to teach Cushman a lesson and planned to return the motorcycle on the night the police came.

The jury found Correa guilty of motor vehicle theft. The trial court sentenced him to six months incarceration and imposed $800.00 in mandatory LFOs. At sentencing, defense counsel noted that Correa had worked sporadically for the past year, that his annual net income was about $1,800 and that in light of his six-month sentence, Correa would need to move and to leave his job. In addition, the judgment and sentence states, "An award of costs on appeal against the defendant may be added to the total legal financial obligations. RCW 10.73.160." CP at 66. The trial court also signed a cost bill which certified the amount incurred in witness fees. These witness costs were not included in the judgment and sentence. The trial court entered an order of indigency on February 11, 2015, finding Correa unable to pay for the expense of appeal. Correa appeals.

3

ANALYSIS

I. CHARGING DOCUMENT IS CONSTITUTIONALLY SUFFICIENT

Correa argues that the charging document is constitutionally deficient because it does not identify the stolen vehicle's owner, the vehicle type, or where in Washington the theft occurred. He argues that without these facts, the charging document does not provide notice of the conduct that is alleged to constitute a crime and does not protect his double jeopardy rights. We disagree.

We review constitutional challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). A defendant has a right under our state and federal constitutions to be informed of the criminal charge against him. *State v. McCarty*, 140 Wn.2d 420, 424-25, 998 P.2d 296 (2000). A charging document satisfies this constitutional principle only if it states all of the essential elements of the crime charged, both statutory and nonstatutory. *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). The goals of this rule are to give notice to the defendant of the nature of the crime he must defend against and to protect the defendant's double jeopardy rights by allowing them to plead the first judgment as a bar to a future prosecution for the same offense. *Kjorsvik*, 117 Wn.2d at 101; *State v. Leach*, 113 Wn.2d 679, 698, 782 P.2d 552 (1989). In reviewing allegations of double jeopardy, a court may review the entire record to establish what was before the court for a prior conviction. *State v. Mutch*, 171 Wn.2d 646, 664, 254 P.3d 803 (2011).

Where the defendant challenges the charging document for the first time on appeal, we liberally construe it in favor of validity. *Kjorsvik*, 117 Wn.2d at 105. The test under this liberal construction rule is (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was

nonetheless actually prejudiced by the inartful language which caused a lack of notice? *Kjorsvik*, 117 Wn.2d at 105-06.

It is sufficient to charge in the language of a statute if the statute defines the offense with reasonable certainty. *State v. Noltie*, 116 Wn.2d 831, 840, 809 P.2d 190 (1991). A defendant is not prejudiced if he received notice of the charge against him and could thus adequately prepare his defense. *Williams*, 162 Wn.2d at 186. To evaluate prejudice, we may look outside the charging document to see if other circumstances of the charging process reasonably informed the defendant in a timely manner of the nature of the charges. *Williams*, 162 Wn.2d at 186.

Theft of a motor vehicle is governed by RCW 9A.56.065 and states, "(1) A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle." Theft means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a).

Here, Correa did not challenge the charging document at trial. So we liberally construe the charging document on its face in favor of validity. *Kjorsvik*, 117 Wn.2d at 106. The charging document said that Correa, "in the State of Washington, on or about July 11, 2014, did wrongfully obtain or exert unauthorized control over the motor vehicle of another, with intent to deprive said person of such motor vehicle." CP at 6. A comparison of the language of the charging document with the language of the statute demonstrates that the charging document did charge all of the elements of the crime of theft of a motor vehicle. RCW 9A.56.065, .020(1)(a).

Although Correa argues that the charging document is deficient because it does not state who owned the motor vehicle, the vehicle type, or where in Washington this occurred, none of the

many cases Correa relies on say that these facts are essential elemental facts of the crime of motor vehicle theft.[2] Nor does there appear to be any common law authority for the proposition that these details are essential factual elements for the crime of motor vehicle theft. Thus, the necessary facts that Correa wrongfully exerted unauthorized control of a motor vehicle of another with intent to deprive said person of the vehicle appears in the charging document. *Kjorsvik*, 117 Wn.2d at 105-06.

Next, in order to evaluate whether Correa was nonetheless prejudiced, we look outside of the charging document to see if other circumstances reasonably informed Correa of the nature of the charge. *Williams*, 162 Wn.2d at 186. Here, the State's declaration of probable cause, filed one day before the charging document, said that the stolen vehicle was a Kawasaki ZX600 motorcycle, Cushman owned it, and the theft occurred in Lacey, Washington. Thus, the probable cause declaration reasonably informed Correa in a timely manner of the specific nature of the charges. *Williams*, 162 Wn.2d at 186. Correa was not prejudiced by the inartful lack of specificity in the charging document. *Kjorsvik*, 117 Wn.2d at 105-06.

Finally, Correa's argument that the charging document was deficient to protect his double jeopardy right to be able to defend against future prosecutions for the same offense is without merit. In reviewing allegations of double jeopardy, a court may review the entire record to establish what was before the court for previous convictions. *Mutch*, 171 Wn.2d at 664. Thus, if the State charged Correa with the same offense in the future, a reviewing court could consider the

---

[2] *See City of Seattle v. Termain*, 124 Wn. App. 798, 800, 805-06, 103 P.3d 209 (2004); *State v. Greathouse*, 113 Wn. App. 889, 900, 56 P.3d 569 (2002); *State v. Winings*, 126 Wn. App. 75, 84, 107 P.3d 141 (2005); *State v. Franks*, 105 Wn. App. 950, 959, 22 P.3d 269 (2001).

entire trial record, which would provide Correa with a complete double jeopardy defense. Thus, because Correa was timely and reasonably notified of the nature of the crime charged and his double jeopardy rights are protected, we hold that the charging document was not constitutionally deficient.

## II. CROSS-EXAMINATION WAS PROPERLY LIMITED

Correa argues that he was denied his right to present a complete defense and his right to confront witnesses when the court sustained a relevance objection, thereby limiting Cushman's cross-examination.[3] Specifically, Correa argues that Cushman's testimony was relevant to show that Correa did not possess the required intent to deprive Cushman of the motorcycle because Correa intended to keep the motorcycle for only a short duration. We disagree.

Typically, we review a claim of a denial of the right to present a defense de novo. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010). We review a trial court's decision to limit cross-examination for abuse of discretion. *State v. Aguirre*, 168 Wn.2d 350, 361-62, 229 P.3d 669 (2010). Because we conclude that the limit on cross-examination merely restricted the scope of cross-examination rather than preventing Correa's defense, we review the trial court's decision to limit Cushman's cross-examination for abuse of discretion. *Aguirre*, 168 Wn.2d at 361-62. A trial court abuses its discretion when it bases its decision on unreasonable or untenable grounds. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

Cross-examination is limited by general considerations of relevance. *See* ER 401, 403; *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). Relevant evidence is any evidence

---

[3] Correa makes no argument regarding his confrontation rights, thus we do not address this issue.

having any tendency to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence. ER 401.

Theft of a motor vehicle requires proof that a person wrongfully obtained or exerted control over the property of another with intent to deprive him of such property. RCW 9A.56.065, .020(1)(a). Wrongfully obtain or exert unauthorized control means to take the property or services of another. RCW 9A.56.010(22)(a). Deprive means "'to take away'" or "'to take something away from.'" *State v. Cuthbert*, 154 Wn. App. 318, 338, 225 P.3d 407 (2010) (quoting WEBSTER'S THIRD INTERNATIONAL DICTIONARY 606 (2002)). Exceeding the scope of permission given to use an item can be theft. *See State v. Clark*, 96 Wn.2d 686, 687-91, 638 P.2d 572 (1982) (holding that where Clark had his friend's permission to borrow his friend's car for one day to run errands, but instead took the car to another State where it was located a month later, the correct charge was not taking a vehicle without permission—joy riding—under RCW 9A.56.070(1), but motor vehicle theft under RCW 9A.56.020(1)(a)).

First, Correa was not denied his right to present evidence that he did not intend to deprive Cushman of the motorcycle, but that he actually intended to teach him a lesson following a late loan repayment. Brown testified that Correa loaned Cushman $40 or $50 and though Cushman promised to repay that day, he did not do so for three or four days. Correa himself testified that he kept the motorcycle for three days because that is how long Cushman took to pay back the money. And the arresting officer testified that Correa told her the same thing: that Cushman owed Correa money and Correa was just teaching Cushman a lesson, but planned to return the motorcycle.

Second, Cushman's testimony about the past loan was not relevant and thus Correa's cross-examination on this point was properly limited. Correa cites to *State v. Walker* for the proposition that duration of a taking is pertinent to the "'intent to deprive'" element. 75 Wn. App. 101, 107-08, 879 P.2d 957 (1994). But *Walker* does not support the conclusion that Cushman's testimony was relevant. *Walker* states that motor vehicle theft does *not* require proof of intent to permanently deprive and also proscribes the *continued* unauthorized use of an automobile beyond an initial unauthorized use. 75 Wn. App. at 107-08.

Here, Cushman authorized Correa to use his motorcycle for only one evening and believed Correa would be back in 45 minutes. Yet Correa told police that he intended to keep the motorcycle for three days; he testified that he knew Cushman expected the motorcycle back the same day it was borrowed; Correa allowed Stanfill to borrow it without Cushman's permission; Stanfill testified that Correa told him he borrowed the motorcycle for three days; and Correa did not answer his phone when Cushman called to get the motorcycle back. This evidence showed that Correa intended to engage in the continued unauthorized use of the motorcycle for at least three days beyond the authorized use of one evening. *Walker*, 75 Wn. App. at 107-08; RCW 9A.56.010(22). Whether or not Correa's intent was to teach Cushman a lesson and return the motorcycle after three days is irrelevant because the statute requires only a showing of intent to deprive for a continued period of unauthorized use. *Walker*, 75 Wn. App. at 107-08. Thus, we hold that Correa was not denied his right to present a defense and that the trial court did not abuse its discretion by limiting Cushman's cross-examination.

### III. IMPOSITION OF LEGAL FINANCIAL OBLIGATIONS

Correa argues that the trial court erroneously imposed appellate costs without making the required inquiry into his ability to pay these LFOs.[4] We disagree.

Correa argues that because his judgment and sentence contains a statement that appellate costs may be imposed, the trial court actually imposed appellate costs. We disagree because the judgment and sentence merely advised Correa that appellate costs *may* be imposed, not that appellate costs *were* imposed.

However, we take this opportunity to address appellate costs. Former RCW 10.73.160(1) (1995) vests the appellate court with discretion to award appellate costs. Under RAP 14.2, that discretion may be exercised in a decision terminating review. We presume a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f).

Here, at sentencing, defense counsel noted that Correa had worked sporadically, that his annual net income was about $1,800, and that in light of his six-month sentence, Correa would need to move and to leave his job. In addition, the trial court entered an order of indigency for this appeal on February 11, 2015. In light of this evidence, we exercise our discretion and decline to impose appellate costs.

---

[4] Correa also argues witness costs were improperly imposed, but in his reply brief, Correa concedes that the witness costs were not actually imposed. Thus, we address the witness costs no further.

No. 47207-4-II

We affirm the conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

LEE, J.

SUTTON, J.