IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, Respondent, v. TEKLEMARIAM DANIEL HAGOS, Appellant. | No. 80391-3-I DIVISION ONE UNPUBLISHED OPINION |

COBURN, J. — Teklemariam Hagos appeals his conviction for assault in the third degree for spitting on a police officer. He contends the trial court erred by admitting the officer's testimony regarding medical treatment she received after the incident. Hagos also contends the trial court erred by admitting evidence of Hagos's interaction with a postal worker that preceded officers' arrival at the scene.

We hold that the trial court did not abuse its discretion by admitting the officer's testimony or by admitting evidence of Hagos's interaction with the postal worker, with one exception: The trial court erred by admitting evidence that Hagos spit at the postal worker during their interaction because that evidence was unduly prejudicial. But because the evidence that Hagos spit at the postal worker was of minor significance compared to the overall evidence as a whole, reversal is not required. We affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS[1]

On June 1, 2019, United States Postal Service employee Paul Scott called 911 and reported that Hagos had used a bicycle to run into Scott while the two men were crossing the street on foot. Scott further reported that, while he was on the 911 call, he used pepper spray against Hagos. Seattle Police Department officers responded to the 911 call, and one of the first officers to arrive was Suzanne Parton. When she first arrived at the scene, Parton commanded Hagos to place his hands on the hood of her patrol car, which he did.

Responding officers decided to detain Hagos, who fit Scott's reported description of his assailant. For safety reasons, the officers decided to place Hagos in handcuffs. Hagos was agitated throughout the duration of his contact with law enforcement. He insisted that he was the one who had been assaulted and that the officers wrongly detained him instead of Scott.

The officers conducted an initial investigation by speaking with Hagos, Scott, and one other civilian. Based on their investigation and Hagos's behavior, the officers determined that, rather than arrest Hagos, they would have him transported to a hospital to be evaluated for potential involuntary treatment or commitment.

An ambulance arrived at the scene with a gurney to transport Hagos. While Hagos was sitting on the ground in handcuffs, ambulance personnel placed a spit sock over his head. The spit sock was a white, bag-like hood made

---

[1] Facts describing the underlying incident are based on the trial court's unchallenged findings, which "are verities on appeal." State v. Bowman, 14 Wn. App. 2d 562, 567, 472 P.3d 332 (2020).

out of mesh fabric.  It covered his entire head and face, and its purpose was to offer protection against spitting without suffocating the wearer.

Parton advised Hagos that he could voluntarily stand up and get on the gurney.  Hagos refused, and officers physically picked him up, carried him several steps, and then placed him on the gurney for transport.

Approximately five seconds after the officers placed Hagos on the gurney, and while he was wearing the spit sock, Hagos spit through the sock at Parton. Specifically, Hagos turned his head toward Parton, off-center from the rest of his body on the gurney, used substantial force of breath to spit, and looked "right at" Parton when he spit.  And he spit when Parton was close enough to him that he could be reasonably assured of his spit landing on her.  Hagos's saliva landed on Parton's face and got into her eye and mouth.  Parton announced that she had been spit on, and Hagos immediately said, "Yeah, by a black guy bitch. Suck my dick."  Two other officers heard Hagos spit at Parton, and the body worn video cameras of Parton and another officer captured Hagos doing so.

The State later charged Hagos with one count of assault in the third degree for spitting on Parton.  Before trial, Hagos moved in limine to exclude evidence of how the alleged spitting at Parton affected her.  Hagos argued that such evidence was "of minimal or no relevance" and "unfairly prejudicial," citing ER 403.  Defense counsel argued that evidence of Parton's treatment did not make it more or less likely that Hagos intentionally committed the assault. Counsel also argued that it could "cause some prejudice in terms of feeling sorry for the officer or wondering what could happen in the future for this officer."

3

The trial court denied Hagos's motion.  At Hagos's later bench trial, Parton testified that she "went to the hospital for treatment" after Hagos spit on her, and that she would continue to be treated until she found out whether or not she was sick.

Hagos also moved in limine to exclude evidence of his interaction with Scott, the postal worker, including evidence that Hagos allegedly assaulted Scott and evidence of 911 calls from Scott and from another witness to the interaction. Hagos argued that evidence of the underlying interaction was irrelevant and unduly prejudicial.

The trial court ruled that it considered "the lead up to the alleged assault" relevant given that "the events that started everything in motion here was the interaction between Mr. Scott and Mr. Hagos."  However, after the prosecutor indicated with regard to the 911 calls that Scott had reported being spit at by Hagos, the court invited the parties to submit additional briefing as to whether the 911 calls or other evidence regarding Hagos's interaction with Scott would implicate ER 404(b).

After additional briefing and argument from the parties, the trial court ruled that it would admit, as res gestae, evidence of Hagos's interaction with Scott. The court explained,

> Broadly speaking, the events that occurred before [the officers] arrive on scene, the events that occurred before the alleged spitting – and I'm referring to the interaction between [Scott] and Mr. Hagos – generally speaking, that interaction is part of the res gestae of the case and is not subject to ER 404(b) so I'm going to permit testimony and evidence concerning the allege[d] interaction between Mr. Scott and Mr. Hagos.

4

The court also ruled that evidence of Hagos spitting at Scott would be admissible to prove Hagos's intent provided testimony of that spitting was introduced:

> That misconduct is not admissible to prove Mr. Hagos'[s] character in order to show conformity therewith under 404(b). I think that's clearly barred by the rule. But [it] may be admissible for some other limited purpose such as showing motive or intent . . . .
>
> I think that – that evidence of an alleged spitting incident before the spitting at Officer Parton or allegedly at Officer Parton, I think that's relevant to prove intent. The Court, as the fact finder, will give it a certain amount of weight or credibility, depending on the testimony of the witnesses. But I think it is relevant to make more probable or not – or to establish on a more likely than not basis Mr. Hagos'[s] intent when he allegedly assaulted Officer Parton.

At trial, the court admitted both 911 calls. Scott testified regarding his interaction with Hagos and recalled that Hagos spit at him. Additionally, Parton testified that she initially went to the scene in response to a call that a postal worker "had deployed . . . pepper spray against [a] person who was hostile." Another officer who was at the scene testified that when he arrived at the scene, "there'd been other officers speaking to – that an assault had occurred."

The trial court later found Hagos guilty as charged. Hagos appeals and contends the trial court erred by admitting Parton's testimony about treatment she received after the incident and evidence regarding Hagos's interaction with Scott.

STANDARD OF REVIEW

We review a trial court's interpretation of an evidence rule de novo as a question of law, and we review the decision to admit evidence for an abuse of discretion. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). A

trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons, including misinterpretation of an evidence rule. Id.

DISCUSSION

*Parton's Treatment Testimony*

Hagos contends that the trial court erred by admitting evidence about Parton's post-incident treatment. We disagree.

Only relevant evidence is admissible. ER 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. " 'The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible.' " State v. Briejer, 172 Wn. App. 209, 225, 289 P.3d 698 (quoting State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002)). That said, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403.

Here, the trial court did not abuse its discretion by concluding that evidence of Parton's post-incident treatment was relevant. As the court observed when it denied Hagos's motion in limine, evidence that Parton sought treatment tends to make more probable the fact that she was spit on. And that fact was "of consequence to the determination of the action," ER 401, because the charged crime required proof of a harmful or offensive touching or striking.

The trial court also did not abuse its discretion by declining to exclude the

evidence as unduly prejudicial. The court stated on the record that it was admitting evidence of Parton's treatment "not for the purpose of establishing victim impact, but for the purpose of showing that [Parton] was, in fact, assaulted." In other words, the trial court clearly understood the limited purpose for which it could consider evidence of Parton's treatment, thus reducing its prejudicial effect. Under these circumstances, admission of the evidence was not manifestly unreasonable or based on untenable grounds or reasons. Cf. State v. DeVincentis, 150 Wn.2d 11, 23, 74 P.3d 119 (2003) (holding that admission of prior bad acts testimony to show common scheme or plan was not abuse of discretion under ER 403 where trial court, in a bench trial, discussed a limiting instruction "reflecting the court's understanding of the limited purpose for which it could use [the] testimony").

Hagos disagrees and argues that the evidence of Parton's treatment was unduly prejudicial "given its almost non-existence probative value." In support of this argument, Hagos asserts that "[n]either the State nor Mr. Hagos ever contended Mr. Hagos'[s] spit did not land on Officer Parton's face." He also points out that intentionality was "the central matter at issue here." But absent a stipulation, the State bore the burden of proving beyond a reasonable doubt that Parton experienced a harmful or offensive touching—even if that was not the central issue in the case. Therefore, Hagos's argument fails.

*Evidence of Hagos's Interaction with Scott*

Hagos contends the trial court erred by admitting evidence of his interaction with Scott. We agree in part. The trial court did not abuse its

7

discretion by admitting evidence of the interaction, with one exception: The trial court did err by admitting evidence that Hagos spit at Scott.

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." "It may, however, be admissible for other purposes." ER 404(b). As relevant here, such evidence may be admissible to prove intent or motive, or as res gestae. State v. Walker, 75 Wn. App. 101, 108, 879 P.2d 957 (1994).

Under the res gestae theory, "evidence of other [acts] is admissible '[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place.' " State v. Tharp, 27 Wn. App. 198, 204, 616 P.2d 693 (1980) (second alteration in original) (quoting EDWARD W. CLEARY, MCCORMICK'S HANDBOOK ON THE LAW OF EVIDENCE § 190, at 448 (2d ed. 1972)), aff'd, 96 Wn.2d 591, 637 P.2d 961 (1981).

In the instant case, Hagos's interaction with Scott was part of the immediate context of his interaction with Parton and explained Parton's arrival at the scene. Furthermore, in addition to res gestae, Hagos's interaction with Scott was relevant for a purpose other than to show propensity. Specifically, as the trial court observed during argument on the issue, it was probative of Hagos's motive for later spitting at Parton:

> [O]ne could argue that [Hagos] was furious that the police show up and immediately take [Scott]'s side, that they order [Hagos] to put his hands on the car, they put him in cuffs, and that testimony regarding the events between Mr. Hagos and Mr. [Scott] are relevant because it kind of informs his reaction to what the police and others were doing to him leading up to the alleged assault on

8

> Officer Parton. . . . [I]sn't that all one story that needs to be told that informs the interaction between the officers and Mr. Hagos and then the alleged motive for the assault?

The trial court also recognized that it could not consider the evidence for propensity purposes by saying that it was "properly equipped to distinguish between the evidence offered for propensity purposes – to the extent it could be – versus the purpose for which the State is offering it." Under these circumstances, the trial court did not abuse its discretion by admitting evidence of Hagos's interaction with Scott.

The trial court did err, however, by admitting evidence that Hagos spit at Scott during their interaction. The court indicated in its ruling that evidence of Hagos's spitting at Scott "is relevant to make more probable or not . . . Mr. Hagos'[s] intent when he allegedly assaulted Officer Parton." In other words, the court's own ruling reflects that it intended to consider the evidence for propensity purposes, i.e., to show that because Hagos intentionally spit at Scott, it was "more probable than not" that Hagos intentionally spit at Parton. But evidence is not admissible if relevant only to show propensity. See State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012) ("ER 404(b) is a categorical bar to admission of evidence for the purpose of proving a person's character and showing that the person acted in conformity with that character.") Therefore, even if the spitting incident with Scott was encompassed in the overall interaction with Scott and admissible under res gestae, the spitting incident itself was unduly prejudicial. Thus, its admission was error. State v. Lane, 125 Wn. 2d 825, 834, 889 P.2d 929 (1995) (res gestae evidence must not be unduly prejudicial).

The State suggests that the earlier spitting incident, like other evidence of the Hagos-Scott interaction, was admissible to prove motive. The State maintains that "Hagos'[s] anger was directed at Officer Parton for placing him in handcuffs and taking him to the hospital for evaluation *while Scott was not detained*." (Emphasis added.) But evidence that Hagos spit at Scott is not probative of Hagos's later feelings about whether or not Scott was detained, much less his motive for spitting at Parton. And, as discussed, that evidence was unduly prejudicial given that the trial court admitted it to show propensity. Therefore, the State's argument is unpersuasive.

Hagos contends, in support of his argument that *all* evidence of his interaction with Scott should have been excluded, that even evidence admitted as res gestae "is subject to ER 404(b)'s four-pronged analysis when it relates to prior acts."[2] He then argues that the trial court erred because it "failed to find, by a preponderance of the evidence, that [an] assault ever actually occurred"; "critically failed to consider that [the] alleged assault had absolutely no relevance"; and "failed to weigh the probative value of this evidence against its prejudicial effect."

But as discussed, evidence of Hagos's interaction with Scott explained officers' arrival at the scene and was also relevant to show motive as to why

---

[2] "To admit evidence of a person's prior misconduct, 'the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.' " Gresham, 173 Wn.2d at 421.

Hagos was angry with officers, which in turn was probative of Hagos's intent for later spitting on Parton. As also discussed, the trial court weighed the probative value of the evidence against its prejudicial effect by acknowledging on the record that it could not consider the evidence for propensity purposes.[3] And finally, Hagos's argument that the trial court failed to find that an *assault* occurred mischaracterizes what the trial court admitted and why. The trial court admitted evidence that an *interaction* occurred so as to provide context and show why Hagos was upset that he, and not Scott, was detained. This evidence was probative of motive and admissible for context *regardless* whether Hagos actually assaulted Scott. For these reasons, Hagos does not persuade us that the trial court abused its discretion in admitting the evidence of the Hagos-Scott interaction, with one exception. The trial court erred by admitting evidence that Hagos spit at Scott because that evidence was unduly prejudicial.

*Harmless Error*

Having concluded the trial court erred by admitting evidence that Hagos spit at Scott, we next consider whether that error requires reversal. It does not.

Non-constitutional errors are harmless, such that reversal is not required,

---

[3] To the extent Hagos argues that the only evidence the trial court subjected to ER 403 balancing was the evidence that Hagos spit at Scott, we disagree. The record reflects that the trial court admitted evidence of the overall interaction as res gestae and probative of motive, admitted evidence of the spitting as probative of intent, and then conducted ER 403 balancing with regard to evidence the State "is offering . . . to establish *motive and/or intent.*" (Emphasis added.) RP (Aug. 7, 2019) at 557. Accordingly, we are not persuaded that the trial court's acknowledgment that it could not consider evidence for propensity purposes should be limited to the evidence that Hagos spit at Scott.

unless "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). " 'The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.' " State v. Hill, 6 Wn. App. 2d 629, 647, 431 P.3d 1044 (2018) (quoting State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).

In the instant case, there was overwhelming evidence that Hagos not only spit on Parton but intended to do so. Multiple officers testified that Hagos was highly agitated, volatile, and uncooperative throughout his contact with law enforcement. This testimony is corroborated by footage from the officers' body worn camera videos depicting Hagos yelling at officers, clearly upset at being detained.

The footage also depicts Hagos yelling, "Don't touch me" after the ambulance arrives with a gurney to transport Hagos. Parton can be heard explaining to Hagos, who is seated on the ground, that nobody will need to touch him if he stands up and gets on the gurney himself. Hagos responds, "No I will not." The footage shows that after Parton suggests a "team carry," three other officers pick up Hagos, who has a spit sock over his head, and place him on the gurney, next to which Parton is standing. Video from Parton's body worn camera shows Hagos saying, as he is carried onto the gurney, "Your momma's a ho, your momma's a bitch, fuck you bitch I hope you go to hell." Hagos, whose head is turned toward Parton as he is placed onto the gurney, continues his colorful

language as the officers discuss how to secure him to the gurney. At 32 minutes and 10 seconds, the video shows Hagos, whose head is still turned toward Parton, say "bitch" and audibly and forcibly spit through the spit sock. Hagos's spit is visible, on video from two body worn cameras, as it escapes the spit sock and moves through the air toward Parton, who immediately responds, "Oh, and I got spit on, through the spit sock. That is fantastic." Just as Parton says "Oh, and I got spit on," Hagos can be heard on video from another officer's body worn camera responding, "Yeah, by a black guy bitch. Suck my dick." Another officer, who was at Hagos's feet, testified that Hagos spit "at . . . Officer Parton" and that he knew Hagos spit at Parton because he "could hear it, and then [he] could see spit in the . . . air." He also testified that none of the other officers got spit on.

Measuring the testimony and the video evidence against any prejudicial effect from the admission of evidence that Hagos spit at Scott, we conclude the trial court's admission of that evidence did not, within reasonable probabilities, affect the outcome of the trial. Reversal is not required. We affirm.

_Coburn, J._

WE CONCUR:

_Brennan, J_                    _Verellen, J_

13